## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**Doris Ann Davis**                                                              **Plaintiff**

**v.**                              **No. 2:13-CV–167-JM-JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                    **Defendant**

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge

James M. Moody, Jr.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Moody

may adopt the recommended disposition without independently reviewing all of the

record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Doris Ann Davis seeks judicial review of the denial of her application for social security disability benefits.[3]  In the past, Davis worked as a personal care aide.[4]  She last worked in February 2011.[5]  She says she stopped working because of back pain.[6]  After she stopped working, she applied for disability benefits and based disability on blackouts, high blood pressure, and back problems.[7]  Although initially alleging disability in June 2010, Davis amended her onset date to coincide with the time she stopped working.[8]

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined Davis has severe impairments — lumbar spine degenerative disc disease with disc herniation, hypertension, history of seizure

---

[3]SSA record at p. 136 (applying on Feb. 8, 2011 and alleging disability beginning June 1, 2010).

[4]*Id*. at pp. 153, 230 & 253.

[5]*Id*. at pp. 153 & 245.

[6]*Id*. at pp. 36, 161 & 244.

[7]*Id*. at p. 244.

[8]*Id*. at p. 34.

disorder, and obesity[9] — but she can do some light work.[10]  Because a vocational expert

identified light work meeting the ALJ's parameters,[11] the ALJ determined Davis is not

disabled and denied the application.[12]

After the Appeals Council denied review,[13] the ALJ's decision became the

Commissioner's final decision for the purpose of judicial review.[14]  Davis filed this case

to challenge the decision.[15]  In reviewing the decision, the court must determine

whether substantial evidence supports the decision and whether the ALJ made a legal

error.[16]  This recommendation explains why substantial evidence supports the decision

---

[9]*Id*. at p. 16.

[10]*Id*. at pp. 18-19 (placing several limitations on light work).

[11]*Id*. at pp. 50-51.

[12]*Id*. at p. 25.

[13]*Id*. at p. 1.

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[15]Docket entry # 1.

[16]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not

and why the ALJ made no legal error.

**Davis's allegations**. Davis challenges the determination that she can do some light work. She contends the ALJ should have identified depression, disorder of the right shoulder, degenerative disc disease of the neck, and cardiomegaly, as severe impairments. She maintains her primary care physician's (PCP) opinion is entitled to controlling weight. She complains because the ALJ attributed a PCP opinion to a rehabilitation counselor. She complains about the evaluation of her credibility. For these reasons, she argues, substantial evidence does not support the ALJ's decision.[17]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Davis can do some light work.[18] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[19] The ALJ placed the following limitations on light work:

> (1) occasional balancing, stooping, kneeling, crouching, crawling, and stair/ramp climbing;

---

disabled.").

[17] Docket entry # 11.

[18] *See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[19] 20 C.F.R. § 404.1567(b).

(2)  no climbing ladders/ropes/scaffolds;

(3)  no hazards like unprotected heights or dangerous machinery;

(4)  work permitting a cane for prolonged walking; and

(5)  work permitting a person to change positions and elevate the legs below the waist when sitting.[20]

The question for the court is whether a reasonable mind would accept the evidence as adequate to show Davis can work within these limitations.  For the following reasons, a reasonable mind would accept the evidence as adequate to support the decision:

1.  **Medication controls blackouts**.  Davis reported a history of blackouts due to a seizure disorder.[21]  An increase of anti-seizure medicine has prevented seizures.[22]  The record documents no seizures during the time period for benefits were denied.  The lack of seizures indicates medication controls/prevents seizures.  A reasonable mind would accept the evidence about seizures as adequate to support the decision because an impairment "which can be controlled by treatment or medication is not considered disabling."[23]  To the extent Davis faces a risk of seizures, the ALJ eliminated work

---

[20]SSA record at p. 18.

[21]*Id*. at p. 381.

[22]*Id*. at pp. 42, 299 & 330.  *But see id*. at p. 539 (reporting a few unreported seizures).

[23]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

involving work hazards, like unprotected heights and dangerous machinery.

2. **Hypertension, or high blood pressure, does not prevent Davis from working**.  "Hypertension is serious because people with the condition have a higher risk for heart disease and other medical problems than people with normal blood pressure."[24]  Davis had high blood pressure when she was working.[25]  She takes medication for control, but her blood pressure remains elevated.[26]  Her doctor recommends weight loss.[27]  Davis has experienced no complications.  A reasonable mind would accept the evidence about hypertension as adequate to support the decision because Davis worked with hypertension, she stopped working for reasons unrelated to hypertension, her blood pressure wavers periodically but stays about the same, and Davis has experienced no complications.

3. **According to medical experts, Davis can do some light work**.  Davis's primary impairment is back pain.  Shortly after Davis stopped working, diagnostic

---

[24]Toni Rizzo & Teresa G. Odle, 3 The Gale Encyclopedia of Med. 2214 (4th ed.).

[25]SSA record at p. 381.

[26]*See id., e.g.* at p. 372 (working on Sept. 28, 2009: 140/90), p. 359 (working on Oct. 15, 2009: 160/80), p. 281 (working on Jan. 11, 2010: 140/80), p. 273 (working on Feb. 8, 2010: 138/84), p. 441 (not working on Feb. 7, 2011: 150/100), p. 534 ((not working on Mar. 24, 2011: 150/80), p. 558 (not working on July 11, 2011: 152/90), p. 566 (not working on Aug. 9, 2011: 170/80), p. 666 (not working on Sept. 15, 2011: 150/90), p. 660 (not working on Sept. 30, 2011: 160/90) & p. 654 (not working on Oct. 21, 2011: 102/80).

[27]*Id.* at pp. 573, 650 & 668.

imaging showed a herniated disc in the lower spine.  A herniated disc is not always symptomatic,[28] but the imaging also showed compression of the thecal sac and displacement of the S1 nerve rootlet.[29]  If a disc herniation impinges on the thecal sac or a nerve root, a person will likely experience symptoms.[30]  Impingement of the S1 nerve root can cause pain radiating from the buttock down the back of the thigh, weakness in the large muscle in the back of the calf, and difficulty standing on the toes.  Davis complained about pain radiating to her right leg and right foot.  Her PCP referred her to a neurosurgeon.[31]

Observing that Davis had never had physical therapy or lumbar epidural steroid injections (LESI), the neurosurgeon recommended LESIs as the "best option right

---

[28]*See* 2 Lawyers' Med. Cyclopedia § 16.9[C] ("Whether a patient experiences discomfort from the disc disease depends on…canal, and foramen size, as well as the percentage of disc herniated."); Dan J. Tennenhouse, Attorneys Med. Deskbook § 24:17 III (4th ed.) ("Protruded disks usually cause no symptoms."); 2 Lawyers' Med. Cyclopedia § 16.9[B] (explaining that a disc "protrusion may or may not compress the spinal cord or nerve roots, causing neurological symptoms and signs").

[29]SSA record at p. 353.

[30]Dan J. Tennenhouse, Attorneys Med. Deskbook § 26:8(3) (4th ed.) ("[L]umbar nerve root compression at the spine produces the sensation of pain "radiating" down the leg along the sciatic nerve.").

[31]SSA record at p. 433 & 577.

now."[32]  Surgery was an option, but Davis feared surgery and elected the injections.[33] Davis claims the injections increased her symptoms,[34] but she never returned to the neurosurgeon.  Failing to return suggests Davis's pain is not as severe as she claims and undermines her credibility about the severity of her back pain.

The agency orthopedic exam also indicates her pain isn't as severe as she claims. The orthopedic examiner found no muscle weakness, no muscle spasm, normal muscle reflex, intact sensation, and negative straight leg raise.[35]  Muscle weakness, muscle spasm, abnormal muscle reflex, decreased sensation, or positive straight leg raise suggest more severe symptoms.  Davis had a decreased range of motion in her back, but she could squat and return to standing.  Being able to squat and rise suggests Davis's "slow shuffling gait" may be due to her weight[36] rather than back pain.

Although the evidence doesn't support the alleged degree of back pain, compression of the thecal sac and displacement of the S1 nerve rootlet likely causes periodic back pain.  The ALJ's limitation on postural functions — balancing, stooping, kneeling, crouching, crawling, and stair/ramp climbing — and the requirement for

---

[32]*Id*. at p. 526.

[33]*Id*. at p. 37.

[34]*Id*. at pp. 37-38, 560 & 667.

[35]*Id*. at p. 509.

[36]Davis's weight and height classifies her as morbidly obese.

work permitting a cane, changing position, and leg elevation adequately responded to periodic back and right leg pain.  Later diagnostic imaging shows the progression of degenerative changes,[37] but that evidence falls outside the time period for which benefits were denied.[38]

    4.  **The PCP's treatment notes do not support his opinion**.  Agency medical experts opined that Davis can do some light work,[39] but the PCP provided a report indicating Davis can do no work.[40]  A treating physician's opinion is entitled to "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence,[41] but the PCP's opinion relies solely on the diagnostic imaging.

    Treatment notes consistently refer to a ruptured disc, but routinely record a normal back and no physical disability — even on the day the PCP completed the

---

[37]SSA record at p. 710 (imaging on Dec. 5, 2012 showing more nerve root impingement).

[38]*Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) (evidence is material to question of disability if it is relevant to claimant's condition during time period for which benefits were denied).

[39]SSA record at pp. 522 & 588 (requiring limits on postural functions and work hazards).

[40]*Id*. at p. 591.

[41]*Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

opinion.[42]  The PCP attributed disabling symptoms to a February 2009 workplace back injury,[43] but there are no treatment records for a back injury.  Treatment records reflect an August 2009 workplace injury, but that injury resulted in trauma to the right shoulder.[44]  The PCP reported that back pain forced Davis to quit working on May 16, 2011, but Davis said she stopped working on January 28, 2011.[45]  These inconsistencies undermine the PCP's opinion.[46]  The ALJ correctly observed that "there is a mix of contradictory information that renders [the] opinion unreliable."[47]

To the extent Davis complains that the PCP's opinion was attributed to a rehabilitation counselor, that mistake has no bearing on the outcome of this case.  The PCP provided an earlier opinion to support Davis's request for the magnetic resonance imaging of the lower back.[48]  The opinion was not intended to assess Davis's ability to work.  Even if it was, the PCP indicated the disabling condition can be removed by

_____

[42]SSA record at pp. 658-63.

[43]*Id*. at p. 591.

[44]*Id*. at p. 381.

[45]*Id*. at p. 244.

[46]*Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011) ("ALJ may discount or even disregard the opinion of a treating physician…where a treating physician renders inconsistent opinions that undermine the credibility of such opinions").

[47]SSA record at p. 22.

[48]*Id*. at pp. 427-28.

treatment.

5. **No evidence shows depression limits Davis's ability to work**.  At step two of
the disability-determination process, the ALJ considers the medical severity of the
claimant's impairment(s).[49]  Step two requires the claimant to show she has a severe
impairment.[50]  If the claimant shows she has a severe impairment, there can be no
reversible error if the record shows the ALJ considered all of the medical evidence and
all of the claimant's impairments.

No question exists about whether the ALJ considered depression as an
impairment because the ALJ determined depression is not a severe impairment and
discussed the medical evidence about depression.[51]  That evidence shows Davis
complained about depression in February 2012.[52]  The PCP prescribed an anti-
depressant.[53]  At that time, Davis was experiencing marital problems.[54]  A few months
later, a different PCP prescribed medication for anxiety.[55]  Davis testified that the

---

[49]20 C.F.R. § 404.1520(a)(4)(ii).

[50]20 C.F.R. § 404.1523.

[51]SSA record at p. 17.

[52]*Id*. at p. 624.

[53]*Id*. at p. 628.

[54]*Id*. at p. 622.

[55]*Id*. at p. 606.

medication helped.[56]  No doctor recommended mental health treatment.  Davis sought

no mental health treatment.  A reasonable mind would view the evidence as adequate

to show depression poses no significant limitation on Davis's ability to work.

6.  **Nothing shows the shoulder interferes with Davis's ability to work**.  Davis's

complaint about the shoulder flows from the August 2009 workplace injury.  At that

time, diagnostic imaging showed mild degenerative changes.[57]  Her PCP diagnosed

tendinitis due to a fall.[58]  In October 2010, Davis complained about right shoulder pain

after a motor vehicle accident.[59]  The treating physician diagnosed right shoulder

strain.[60]  The record reflects no further complaints about the shoulder.  No question

exists about whether the ALJ considered the evidence about the shoulder because the

ALJ determined that right-shoulder-osteoarthritis is not a severe impairment and

because the ALJ discussed the medical evidence about the shoulder.[61]

7.  **No evidence indicates degenerative changes in the neck interfere with**

**Davis's ability to work**.  The complaint about the neck flows from diagnostic imaging

---

[56]*Id*. at p. 47.

[57]*Id*. at p. 324.

[58]*Id*. at p. 380.

[59]*Id*. at p. 340.

[60]*Id*. at p. 341.

[61]*Id*. at p. 16.

12

in October and December 2009 showing mild degenerative changes.[62]  The descriptor

"mild" suggests no significant limitations.  No question exists about whether the ALJ

considered the evidence about the neck because the ALJ determined that degenerative

changes in the neck pose no severe impairment and because the ALJ discussed the

applicable medical evidence.[63]

    8.  **There's insufficient evidence of cardiomegaly**.  The argument about

cardiomegaly, or enlarged heart, flows from October 2009 diagnostic imaging of the

chest.[64]  The imaging was obtained after a motor vehicle accident.  The most common

cause for an enlarged heart is high blood pressure.  Davis has high blood pressure.  The

PCP recommended additional imaging,[65] but there is no additional imaging.  In

November 2011, the PCP recommended a cardiology evaluation based on vague

complaints of chest pain and elevated cholesterol,[66] but the record reflects no cardiology

evaluation.  This evidence is insufficient to establish cardiomegaly as a severe

impairment.  More importantly, cardiomegaly is not an impairment; it is a symptom of

an impairment.

---

[62]*Id*. at pp. 325, 335 & 338.

[63]*Id*. at p. 16.

[64]*Id*. at p. 336.

[65]*Id*. at p. 365.

[66]*Id*. at p. 640.

9. **Vocational evidence supports the decision**.  The vocational expert classified Davis's past work as medium work.[67]  The ALJ asked the vocational expert about available light.  According to the vocational expert, Davis's work skills transfer to light work as a companion.[68]  The vocational expert confirmed that a companion can work with the ALJ's limitations.[69]  The vocational expert's testimony supports the decision because it shows work exists that Davis can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[70]  A reasonable mind would accept the vocational evidence as adequate to show light work exists that Davis can do.

### Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to support the decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Davis's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

[67]*Id*. at p. 49.

[68]*Id*. at p. 50.

[69]*Id*. at pp. 50-51.

[70]42 U.S.C. § 1382c(a)(3)(B) (defining disability).

Dated this 10th day of April, 2015.

_____
United States Magistrate Judge